STATE OF NORTH CAROLINA v. RAYMOND CHARLES CREASON

No. 386PA84

(Filed 27 February 1985)

**1. Constitutional Law § 67; Searches and Seizures § 47— confidential informant— disclosure of identity not required—no constitutional issue**

Defendant's motion to require the State to disclose the name of a confidential informant was properly denied where defendant did not present or argue the motion to the trial court on constitutional grounds, and defendant was not entitled to disclosure under G.S. 15A-978 because the evidence sought to be suppressed was seized pursuant to a search warrant and because there

was corroboration of the existence of the informant independent of the testimony in question.

**2. Narcotics § 5— guilty of possession of LSD with intent to sell or deliver—disjunctive phrasing not improper**

A verdict of guilty of possession of LSD with intent to sell or deliver did not lack unanimity in that the jury was presented with two alternative acts because the intent of the legislature was to prevent the transfer of controlled substances from one person to another; *intent* is the gravamen of the offense, and "sell" and "deliver" are synonymous. G.S. 90-95(a)(1).

Justice VAUGHN did not participate in the consideration or decision of this case.

ON the State of North Carolina's petition for discretionary review and the defendant's petition for writ of certiorari of the decision of the Court of Appeals reported at 68 N.C. App. 599, 315 S.E. 2d 540 (1984). Judgments entered by *Long, J.*, at the 29 March 1983 session of Superior Court, ROWAN County. Heard in the Supreme Court 11 December 1984.

*Rufus L. Edmisten, Attorney General, by James Peeler Smith, Assistant Attorney General, for the state.*

*Adam Stein, Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

Upon review, in our discretion, of the decision of the Court of Appeals, we affirm in part and reverse in part, for the reasons hereinafter set forth.

The evidence presented by the state on voir dire tended to show the following: On 28 October 1982 John Lollis, a police officer with the city of Lexington, called Detective Mark Shue of the Rowan County Sheriff's Department and told him that he had received information that the defendant, Raymond Charles Creason, had sold LSD and marijuana at Creason's residence within the preceding week. Lollis reported that the informant, who had said that he had bought drugs from defendant during the previous week at defendant's residence, was willing to assist in an investigation. Detective Keith Owen testified that he had used the informant on numerous occasions in the past and that the informant had given information leading to about four arrests and con-

victions. The informant had never provided any information that had given the officers reason to doubt his truthfulness. Detective Shue asked Officer Lollis to bring the informant to meet him.

At the meeting place the informant told Detective Shue how he knew that defendant was selling drugs. Detective Shue asked the informant to make a controlled buy of LSD at the defendant's residence. Before proceeding further the informant and his car were searched by Shue, Lollis, and Owen and no controlled substances were found. Detective Shue instructed the informant about the laws of entrapment, gave him some marked money, and told him to make a drug purchase from Mr. Creason. The informant, followed by the police officers, then drove to the defendant's residence, got out of his car, and went into defendant's house where he stayed for about three or four minutes. The informant then left the house, got back in his automobile, and drove back to the place where he had originally met with the three officers. He and his vehicle were searched and several tablets of LSD were found on his person. The informant told the three officers that he had bought the LSD from Creason. The informant also said that he had seen other drugs in Creason's residence. He said that he had observed LSD purple microdots and several bags of marijuana.

Based on this information, Detective Shue prepared his affidavit and obtained a search warrant for defendant's residence. He then went there to conduct the search. Detective Shue knocked on the door and defendant asked what he wanted. Detective Shue identified himself and said that he had a search warrant. Defendant attempted to slam the door, but Detective Shue proceeded into the house to conduct the search. Detective Shue testified that the first thing he and the four or five officers accompanying him did after entering the residence was: "We advised Mr. Creason of his constitutional rights. We handcuffed him; read him a copy of the search warrant and set him in a chair." The officers then proceeded to search the house. In the house at various locations were found three plastic bags containing green vegetable matter, later identified to be marijuana, a plastic vial containing forty-four purple pills, two purple half pills, and one red pill, all of which were later identified as LSD; a set of scales; and a note pad on which were written names, telephone numbers, references to bags and half bags, and computations. Shue testified

that during the search, after two bags of marijuana were found, the defendant said, "that's all the drugs." A ten dollar bill and a five dollar bill which had the same serial numbers as the bills given to the informant were found in defendant's wallet. Later at the sheriff's department defendant said that he did not know the name of the person who had set him up, but he knew who the person was. Except for the reference to the money, substantially the same evidence was introduced before the jury.

Defendant's sole witness, who testified only during the voir dire, said that he and defendant were at a package store in Midland between 6:00 and 9:20 or 9:25 p.m. on October 28.

Two questions are presented for our review. We affirm the Court of Appeals on one and reverse on the other.

I.

[1] Defendant argues that his constitutional and statutory rights were violated by the denial of his motion to require the state to disclose the name of the confidential informant.

We take note that defendant did not present this motion to the trial court on constitutional grounds, the motion was not argued on constitutional grounds, and the trial court did not determine it on constitutional grounds. A careful reading of the record and transcript leads us to this conclusion.

The written motion states:

Pursuant to N.C.G.S. 15A-978, defendant challenges the validity of the search warrant for his house and person issued on or about October 28, 1982, and the admissibility of evidence obtained thereunder by contesting the truthfulness of the testimony showing probable cause of its issuance. Defendant, moreover, challenges the existence of the alleged confidential informant and requests the Court to issue an order compelling the district attorney to reveal the identity of said informant.

The grounds for this motion are that defendant was not present at the house on Highway 29 at the time when the alleged confidential informant supposedly met with defendant. The information that the alleged confidential informant purportedly gave the Rowan County Sheriff's Department

deputies, moreover, is not consistent with what the deputies allegedly found at defendant's residence and is incredible.

Supporting affidavits are attached hereto and incorporated herein.

This the 7th day of February, 1983.

SHERRILL & SHERRILL
By: s/ Susan R. Sherrill
Attorney for Defendant

It is clear that the motion does not allege the violation of constitutional rights, but expressly relies upon N.C.G.S. 15A-978.

In the oral presentation of the motion to the trial judge, defendant did not argue or even mention fourth amendment rights or the constitution. He did state that the case of *Franks v. Delaware*, 438 U.S. 154, 57 L.Ed. 2d 667 (1978), entitled him to an evidentiary hearing on the motion. He received a full plenary hearing on the motion. Defendant's argument in making the motion was that the informant, if he existed at all, was more than a tipster and was a material witness in the case as a participant in the alleged crimes. For this reason, defendant says he is entitled to disclosure of the identity of the informant.

Some forty pages of the transcript recite the evidence offered in support of defendant's motion for disclosure of the informant's identity. Thereafter appears the argument of counsel on the motion. Defendant does not make an argument based on constitutional grounds and, more particularly, on fourth amendment principles. Likewise, the state did not make an argument based upon constitutional principles.

In denying the motion, the trial court stated:

THE COURT: After full evidentiary hearing, the Court hereby denies the Defendant's motion to suppress and amended motion to suppress the evidence obtained by the search warrant. The Court likewise denies the motion of the Defendant challenging the truthfulness of the affidavit alleging—showing probable cause for issuance of the search warrant. In doing so, the Court holds the affidavit provided reasonable cause to believe the proposed search for evidence would reveal the presence of the described objects upon the

described premises and would aid in the apprehension or conviction of the Defendant. The Court further finds that the information provided in the affidavit for the search warrant was truthful and was furnished in good faith by the affiant. Motion is denied.

From the foregoing it is clear that no constitutional issues were presented, argued, or decided in the trial court. The Court of Appeals properly resolved the issue on statutory grounds. This Court is not required to pass upon a constitutional issue unless it affirmatively appears that the issue was raised and determined in the trial court. *State v. Woods,* 307 N.C. 213, 297 S.E. 2d 574 (1982); *City of Durham v. Manson,* 285 N.C. 741, 208 S.E. 2d 662 (1974); *State v. Jones,* 242 N.C. 563, 89 S.E. 2d 129 (1955); *Management, Inc. v. Development Co.,* 46 N.C. App. 707, 266 S.E. 2d 368, *disc. rev. denied and appeal dismissed,* 301 N.C. 93 (1980). This is in accord with decisions of the United States Supreme Court. *E.g., Irvine v. California,* 347 U.S. 128, 98 L.Ed. 561 (1954); *Edelman v. California,* 344 U.S. 357, 97 L.Ed. 387 (1953). Defendant raises this issue for the first time on appeal. Because he failed to ask the trial court to pass upon the constitutional issue, we decline to do so now. *Stone v. Lynch,* 312 N.C. 739, 325 S.E. 2d 230 (1985); *State v. Woods,* 307 N.C. 213, 297 S.E. 2d 574.

Further, there are statutory grounds upon which to determine the question of disclosure. *Cf.* Annot., 24 A.L.R. 4th 1266, § 8 (1983). Constitutional questions will not be passed upon if other grounds for determination exist. *State v. Blackwell,* 246 N.C. 642, 99 S.E. 2d 867 (1957); *State v. Jones,* 242 N.C. 563, 89 S.E. 2d 129. Here defendant also relies upon N.C.G.S. 15A-978 to support his motion for disclosure. The pertinent parts of the statute are:

(b) In any proceeding on a motion to suppress evidence pursuant to this section in which the truthfulness of the testimony presented to establish probable cause is contested and the testimony includes a report of information furnished by an informant whose identity is not disclosed in the testimony, the defendant is entitled to be informed of the informant's identity unless:

(1) The evidence sought to be suppressed was seized by authority of a search warrant or incident to an arrest with warrant; or

(2) There is corroboration of the informant's existence independent of the testimony in question.

The provisions of subdivisions (b)(1) and (b)(2) do not apply to situations in which disclosure of an informant's identity is required by controlling constitutional decisions.

N.C. Gen. Stat. § 15A-978(b) (1983).

Although subdivisions (b)(1) and (2) do not apply where disclosure is required by "controlling constitutional decisions," as we have previously noted, no constitutional issues are properly before this Court. By the express terms of the statute, defendant is not entitled to disclosure of the identity of the informant. The evidence was seized pursuant to a search warrant; therefore defendant is not entitled to this disclosure. N.C. Gen. Stat. § 15A-978(b)(1). Additionally, there was corroboration of the existence of the informant independent of the testimony in question. N.C. Gen. Stat. § 15A-978(b)(2).

The Court of Appeals correctly affirmed the denial of defendant's motion for disclosure.

II.

[2] We turn now to the state's argument that the Court of Appeals erred by vacating defendant's conviction of possession of LSD with intent to sell or deliver. We find merit in the argument by the state and, therefore, reverse the decision of the Court of Appeals on this issue.[1]

Defendant was charged and convicted of possession "with intent to sell or deliver a controlled substance, to wit" LSD. The

---

1. This issue may affect a host of our criminal statutes. The proposed revision of chapter 14 of the General Statutes of North Carolina could resolve many of these questions. A few of the statutes using the conjunction "or" are: N.C.G.S. 14-8 (rebellion against the state), -9 (conspiracy to rebel), -10 (secret organization), -27.2 (rape), -27.4 (first-degree sexual offense), -28 (malicious castration), -30.1 (malicious throwing of acid), -34 (assault by pointing gun), -39 (kidnapping), -45 (miscarriage), -49 (use of explosives), -54 (breaking or entering), -67 (attempting to burn buildings), -120 (forgery), -195 (profanity on passenger train), -190.9 (indecent exposure), -283 (exploding bombs).

charge was based upon N.C.G.S. 90-95(a)(1), which provides that it is unlawful "[t]o manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance."

The Court of Appeals held that "two distinct crimes in the alternative were charged—possessing LSD with intent to sell it, or possessing LSD with intent to deliver it . . . ." 68 N.C. App. at 603, 315 S.E. 2d at 544. In so doing, the Court of Appeals failed to recognize the intent of the legislature in adopting the statute. The intent of the legislature was twofold: (1) to prevent the manufacture of controlled substances, and (2) to prevent the transfer of controlled substances from one person to another. While the *sale* of narcotics and the *delivery* of narcotics are separate offenses, *State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357 (1976), the possession of narcotics with the intent to "sell or deliver" is one offense. On this charge the state is required to prove two elements: (1) defendant's possession of the drug, and (2) defendant's intention to "sell or deliver" the drug.

The evil sought to be prevented by the legislature is the possession of drugs with the intent to place them into commerce by transferring them from one to another by either the sale or delivery of the drug. A sale is a *transfer* of property for a specified price payable in money. *State v. Albarty*, 238 N.C. 130, 76 S.E. 2d 381 (1953). In the context of controlled substance statutes, "deliver" means the actual, constructive, or attempted *transfer* from one person to another of a controlled substance. N.C. Gen. Stat. § 90-87(7) (1981); *State v. Medina*, 87 N.M. 394, 395, 534 P. 2d 486, 487 (1975). It is the *intent* of the defendant that is the gravamen of the offense. The intent of the legislature was that possession of narcotics with the intent to transfer them to another person is a more serious offense than possession for one's own use. Whether the transfer was to be by sale or delivery, or both, is immaterial. As long as the jury finds that the possession was with the intent to "sell or deliver," the crime is proved.

This conclusion is also supported by the grammatical construction of the statute. It is to be noted that the words "sell" and "deliver" are not separated by a comma but are coupled together by the conjunction "or." By omitting the comma, the legislature manifested its intent that "sell or deliver" is a phrase

modifying the required intent. *See* M. Freeman, *The Grammatical Lawyer* 91 (1979); *see also* Webster's Third New International Dictionary 1585 (1971). It is thus apparent that the legislature intended the crime to be complete if one possesses the narcotic with intent to transfer it, whether by sale or delivery.

Our analysis is buttressed by *State v. Jones*, 242 N.C. 563, 89 S.E. 2d 129. In *Jones* defendant challenged an indictment as being duplicitous which alleged that he did "unlawfully and wilfully build or install a septic tank" without first obtaining a permit. The Court held that the terms "build" and "install" were synonymous and that the gist of the offense was not in the manner in which the tank was completed but in defendant's failure to obtain the permit. Likewise, here the only difference between "sell" and "deliver" is that money changes hands in a sale. Within the intent of the legislature, the terms are synonymous, the gist of the offense being possession with the intent to *transfer* the contraband.

> [I]t is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime. *See State v. Gregory*, 223 N.C. 415, 27 S.E. 2d 140 (1943). Thus, G.S. 15-153 provides that an indictment shall not be quashed "by reason of any informality or refinement" if it accurately expresses the criminal charge in "plain, intelligible, and explicit" language sufficient to permit the court to render judgment upon conviction.

*State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E. 2d 719, 731 (1981).

Defendant relies upon *State v. Albarty*, 238 N.C. 130, 76 S.E. 2d 381, which we do not find to be persuasive. The Court held that Albarty was charged with selling lottery tickets or bartering lottery tickets and that this was a fatal defect. Albarty was not charged with possession of lottery tickets with the *intent* to sell or barter. The Court held that sale and barter were not synonymous for the purpose of the two substantive offenses: sale of lottery tickets and barter of lottery tickets. Here defendant is faced with only *one* offense: possession of LSD with intent to sell or

deliver. The indictment gave defendant proper notice of the crime charged.

Defendant's argument, that the use of the disjunctive verdict form resulted in a lack of unanimity in the jury verdict, was reconciled against defendant in *Jones v. All American Life Insurance Company*, 312 N.C. 725, 325 S.E. 2d 237 (1985). *Jones* involved the application of the common law "slayer" doctrine as a defense to an action on a life insurance policy. The evidence indicated the plaintiff "killed or procured the killing" of the insured. There plaintiff argued that the submission of the disjunctive issue left open the possibility that less than all the jurors could agree on whether plaintiff herself killed the insured or had him killed by another person. We held that plaintiff's participation in the death of the insured by either of the two alternatives bars her from recovering the proceeds of the policy. It is only necessary that the jury unanimously agree that she participated in causing his death. "[S]o long as all twelve jurors find that she participated in one way or the other the requirement of unanimity is met although six may have found that plaintiff 'killed' Hilliard and six may have found that she 'procured the killing.'" *Id.* at 738, 325 S.E. 2d at 244.

So, here, as long as all twelve jurors found that defendant possessed the LSD with intent to transfer it to another, the requirement of unanimity is met, although six jurors may have found that defendant intended to "sell" the LSD and six jurors may have found that defendant intended to "deliver" the LSD. To hold that defendant did not violate the statute because six jurors could have found that he intended to sell the LSD and the other six jurors could have found that he intended to deliver it would be most bizarre. Justice would not be favored by such results.

Defendant's argument that the state must prove the specific act committed by the defendant is not applicable vis-a-vis "sell or deliver." The specific act that the state must prove is the intent to transfer the LSD to another by either sale or delivery. The form of the verdict did not afford the jury with two alternative illegal acts, only one, namely, possession of LSD with the requisite intent.

Neither the form of the indictment nor the verdict was erroneous. We accordingly reverse the Court of Appeals on this issue.

Affirmed in part; reversed in part.

Justice VAUGHN did not participate in the consideration or decision of this case.